UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARLENE WILLIAMS-JEFFERIES<br><br>*Plaintiff*,<br><br>v.<br><br>AARP,<br><br>*Defendant*. | Civil Action No. 15-1415 (RDM) |

### MEMORANDUM OPINION AND ORDER

This is a discrimination case alleging violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; violations of the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*; and D.C. common-law claims, including claims for intentional and negligent infliction of emotional distress ("IIED" and "NIED"). Defendant AARP moves to dismiss Count III of the complaint, which alleges IIED and NIED, as time-barred, or, alternatively, for failure to state a claim. Dkt. 8. For the reasons stated below, the Court will grant the partial motion to dismiss.

### I. BACKGROUND

Because this case is before the Court on a motion to dismiss, the Court assumes the truth of the factual allegations in the complaint, from which the following details are drawn. *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015).[1]

---

[1] The Court also takes judicial notice of certain facts appearing in a report prepared by the D.C. Office of Human Rights regarding Williams-Jefferies's Equal Employment Opportunity ("EEO") complaint, which she has attached as an exhibit to her complaint here. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).

Plaintiff Darlene Williams-Jefferies worked at AARP, which was formerly known as the American Association of Retired Persons, from 1980 to 2008.  Dkt. 1-1 at 4 n.1.  For much of that time, Williams-Jefferies, who is an African-American woman, worked as an "administrative associate."  *Id.* at 4.  In October 2006, she applied for a promotion to the position of Executive Secretary to the Director of the Office of Board Support.  *Id.*  In March 2007, her application was denied and the position was instead offered to a less experienced white male "contract employee" whom she had trained.  *See id.* at 25.  In June 2007, Williams-Jefferies filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was denied the position because of her race.  *Id.* at 4.  In the ensuing investigation, AARP defended its decision not to select Williams-Jefferies for the position on the ground that the white employee was better qualified.  *Id.* at 25–26.

Williams-Jefferies alleges that, beginning after she filed her complaint with the EEOC and continuing through March 2008—when she was fired—she was subjected to hostility and mistreatment by her supervisors.  *Id.* at 7.  According to the complaint, shortly after she filed her EEOC complaint, Williams-Jefferies's supervisor began to "bombard[]" her with tasks "with nearly impossible deadlines" and to prevent her from "seek[ing] assistance from colleagues."  *Id.* at 10.  In October 2007, several months after she filed the complaint, her supervisor brought her into his office, closed the door, and erupted, "burst[ing] into a shouting fit," "slamm[ing] his fists repeatedly on his desk, turning red in the face, yelling, 'It's your job!'"  *Id.*  According to the complaint, Williams-Jefferies "felt physically threatened" by the incident.  *Id.* at 14.  In the wake of the October 2007 incident, Williams-Jefferies alleges, she met with AARP's general counsel to discuss the incident and a possible transfer, but the general counsel told her that AARP could not accommodate her request.  *Id.* at 10.

AARP fired Williams-Jefferies in March 2008, citing her "continued poor performance and insubordination." *Id.* at 7, 27. The D.C. Office of Human Rights, to which the EEOC had referred Williams-Jefferies's complaint, issued a report in February 2014, finding no probable cause to believe that she had been the victim of discrimination or retaliation. *Id.* at 36. The EEOC adopted the Office's conclusions and issued Williams-Jefferies a right-to-sue letter in May 2015. *Id.* at 22. On August 6, 2015, Williams-Jefferies, then proceeding *pro se*, filed a complaint in D.C. Superior Court. *Id.* at 2. Construed liberally, the complaint appears to allege racial discrimination, retaliation, and hostile work environment in violation of Title VII and the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq. Id.* at 3–17. It also appears to allege the common-law torts of wrongful discharge, IIED, and NIED. *Id.* AARP removed this action to federal court later that month. Dkt. 1 at 1.

The matter is now before the Court on AARP's partial motion to dismiss. Dkt. 8. The motion is opposed by Williams-Jefferies, who has now obtained counsel. Dkt. 14.

## II.  LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is designed to "test the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim to relief,' and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief

that is plausible on its face." *Iqbal*, 556 U.S. at 678.  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56.

### III.  DISCUSSION

Although the complaint includes multiple claims, AARP moves to dismiss only Count III, which claims that AARP intentionally or negligently caused Williams-Jefferies emotional distress.  *See* Dkt. 1-1 at 13–16.  That Count alleges that Williams-Jefferies suffered acute emotional distress as a result of "the disparate treatment, the retaliation and wrongful termination" that she experienced—and, in particular, as a result of the October 2007 incident with her supervisor, in which he became "violently enraged, slamming his fists and yelling at her in such a way that the entire office could hear."  *Id.* at 13–14.  It further alleges that Williams-Jefferies felt "physically threatened and defensive" as a result of her supervisor's conduct, and adds that she "can recall several other incidents where her supervisor was similarly or equally volatile toward her."  *Id.* at 14.

AARP makes three arguments why Count III should be dismissed.  First, AARP argues that Williams-Jefferies's IIED and NIED claims are both untimely, because under D.C. law the statute of limitations for an IIED or NIED claim is three years, and Williams-Jefferies did not bring suit until more than seven years after she was fired.  Dkt. 8-1 at 4–5.  Second, AARP argues that the allegations contained in Count III, even taken as true, do not state an IIED claim, because the conduct Williams-Jefferies describes is insufficiently "extreme and outrageous" to satisfy the high standard set by D.C. law for pleading IIED claims.  *Id.* at 5–8.  Finally, AARP argues that the relevant allegations also fail to state an NIED claim, because they do not show

4

that she was in a "zone of physical danger," as required under D.C. law. *Id.* at 8–10. The Court agrees that the claims are untimely.

Absent the operation of some rule that would extend the accrual of Williams-Jefferies's IIED and NIED claims, or alter or toll the statute of limitations, it is clear that the claims are untimely. The D.C. Code specifies different statutes of limitations for different common-law causes of action. *See* D.C. Code § 12-301. Although the Code does not provide a specific limitations period for IIED and NIED claims, it includes a "residual" statute of limitations of three years for causes of action "not otherwise specifically prescribed." *Id.* § 12-301(8). The D.C. Court of Appeals has confirmed that this three-year statute applies to IIED claims, *see Saunders v. Nemati*, 580 A.2d 660, 661 (D.C. 1990), and the parties agree that, at least in the usual course, it applies to NIED claims as well. Here, Williams-Jefferies's IIED and NIED claims arise out of events that took place during her employment at AARP, which ended in March 2008. She did not file suit, however, until August 2015, over seven years later. Dkt. 1-1 at 2. Accordingly, absent some rule that would extend, alter, or toll the three-year statute of limitations, Williams-Jefferies's IIED and NIED claims are untimely.

Williams-Jefferies's principal argument is that her IIED and NIED claims are "intertwined with" her Title VII claims, and thus the Title VII statute of limitations—not the D.C. statute of limitations—controls. Dkt. 14 at 5–7. Williams-Jefferies's argument draws on a rule gestured at by the D.C. Court of Appeals in *Saunders v. Nemati*, 580 A.2d 660. In that case, the plaintiff pled claims for IIED and medical malpractice—the IIED claim premised on the defendant's alleged "verbal abuse" of the plaintiff, who was his patient, and the malpractice claim premised on the defendant's "delay in rendering care" as well as the abuse. *Id.* at 662–63. The D.C. Court of Appeals concluded that the IIED claim was subject to the three-year residual

statute of limitations and was thus timely filed. In reaching this conclusion, however, the Court of Appeals first explained that "in certain cases where [IIED] was included among a number of alleged torts, the one-year statute of limitation [applicable to assault, battery, and other torts] has been applied where the nature of the action rested on the other torts and the emotional distress aspect of the claim was essentially an outgrowth of the other pleaded torts." *Id.* at 662. But it declined to apply that rule because the IIED claim alleged in *Saunders* was "a clear and district tort," and was not "intertwined with" another tort subject to a shorter statute of limitations. *Id.* Although the complaint also alleged a claim for medical malpractice, the Court of Appeals explained, "[m]edical malpractice is not a distinct cause of action" under D.C. law, but rather "depends upon the underlying acts." *Id.* at 663. Thus, to the extent the medical malpractice claim was premised on the same verbal abuse at issue in the IIED claim, that claim was predicated on the IIED claim—not vice versa—and was subject to the same statute of limitations applicable to the IIED claim. *Id.* Because the IIED claim, accordingly, neither "rested on" nor was "essentially an outgrowth of" the plaintiff's medical malpractice claim, there was no basis to subject the IIED claim to any statute of limitations other than the standard three-year limitations period. *Id.* at 662–63.

Williams-Jefferies argues that, because her IIED and NIED claims are "intertwined with" her Title VII claim, the statute of limitations set out in Title VII, and not the three-year statute of limitations prescribed by § 12-301(8), controls those claims. In seeking to take advantage of the *Saunders* rule, however, Williams-Jefferies faces several hurdles. First, it is unclear that *Saunders* applies to *extend* the three-year statute of limitations, as opposed to *shortening* it. *See id.* at 663 (explaining that, in Saunders's case, "there were no other causes of action with distinct limitation periods so as arguably to *constrict* the time period otherwise applicable to an action"

6

for IIED). Second, it is equally unclear that *Saunders* applies where the limitations period for the allegedly "intertwined" cause of action is not "specifically prescribed" in § 12-301, but, rather, is prescribed by the governing *federal* law. *See Hamilton v. District of Columbia*, 852 F. Supp. 2d 139, 152 (D.D.C. 2012) (concluding that it does not). Even assuming, however, that the *Saunders* rule can extend statutes of limitations and that it might apply where an IIED claim is "intertwined with" a federal cause of action subject to a federal statute of limitations, Williams-Jefferies cannot prevail here, for the following reasons.

First, even if Williams-Jefferies could take advantage of Title VII's statute of limitations, Title VII's limitations period—standing alone—would not make her claims timely. Under Title VII, a victim of discrimination must file a complaint with the EEOC within 180 days of the event that gave rise to the claim. 42 U.S.C. § 2000e-5(e)(1). Once the EEOC has issued a complainant a right-to-sue letter, as the EEOC did here, she must file suit within 90 days. *Id.* Both statutes of limitations are significantly *shorter* than the three-year statute of limitations that would generally govern Williams-Jefferies's IIED and NIED claims under D.C. law, and under either, Williams-Jefferies's claims would be just as untimely as they would be under § 12-301(8). Thus even if *Saunders* applies, Title VII's statute of limitations—without more—would not render Williams-Jefferies's IIED and NIED claims timely.

Instead, what Williams-Jefferies needs is for the relevant statute of limitations—whether it is three years or 90 days—to have been tolled or otherwise delayed[2] while she exhausted her

---

[2] Williams-Jefferies might, for example, seek to avail herself of some rule that would postpone the accrual of her IIED and NIED claims. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013) ("As a general matter, a statute of limitations begins to run when the cause of action 'accrues'—that is, when the plaintiff can file suit and obtain relief." (internal quotation marks omitted)). But Williams-Jefferies points to no such rule, and, in light of the D.C. Court of Appeals's repeated admonitions about the strict interpretation of statutory

administrative remedies under Title VII.  Such a rule arguably has some appeal, as it would permit a victim of discrimination *and* IIED or NIED to consolidate her claims in a single case rather than proceed piecemeal—for instance, by having to bring an IIED or NIED lawsuit before the relevant agency has finished an investigation of a Title VII claim.  But the Supreme Court has squarely rejected this argument in the context of *federal* causes of action, holding that the limitations period applicable to 42 U.S.C. § 1981 is not tolled while a plaintiff separately exhausts his administrative remedies under Title VII.  *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465–66 (1975) ("It is conceivable, and perhaps almost to be expected, that failure to toll will have the effect of pressing a civil rights complainant . . . into court before the EEOC has completed its administrative proceeding.").  In light of *Johnson*, the Second, Seventh, and Ninth Circuits have rejected the argument that—at least as a matter of federal law—the exhaustion of administrative remedies under Title VII operates to toll the statute of limitations for state-law claims.  *See Castagna v. Luceno*, 744 F.3d 254, 256–57 (2d Cir. 2014); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 323 (7th Cir. 1992); *Arnold v. United States*, 816 F.2d 1306, 1313 (9th Cir. 1987); *see also Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 372 (D.D.C. 2014).

       The Court agrees with these courts that—at least as a matter of federal law—*Johnson* precludes the contention that Williams-Jefferies's IIED and NIED claims were tolled while she exhausted her Title VII claim.  And Williams-Jefferies points to no principle of D.C. law that would salvage those claims.  To the contrary, the D.C. Court of Appeals has often emphasized that D.C. statutes of limitations are "strictly construed in accordance with their terms," *Atiba v.*

---

limitations periods, *see infra* pp. 8–9, the Court sees no basis to conclude that the accrual of Williams-Jefferies's IIED and NIED claims was postponed while she exhausted her Title VII remedies.

*Wash. Hosp. Ctr.*, 43 A.3d 940, 941 (D.C. 2012), and that the District "is one of a minority of jurisdictions that has not adopted a general equitable 'saving' statute to toll statutes of limitations in cases of reasonable mistake," *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 156 (D.C. 1998). *See also Curtis v. Aluminum Ass'n*, 607 A.2d 509, 512 (D.C. 1992) (Rogers, C.J., concurring) (arguing that the Court of Appeals should overrule its "current rule," which "means that, contrary to the usual concern about judicial economy, much less making the courts available and avoiding unnecessary litigation and litigation costs, a plaintiff must file in all possible fora in order to avoid a later limitations bar"). There, accordingly, is no basis under D.C. law for applying a rule that would toll Williams-Jefferies's IIED and NIED claims while she exhausted her Title VII claims.

Finally, even if the *Saunders* rule were to apply to a plaintiff who brings IIED and NIED claims concurrently with Title VII claims, Williams-Jefferies's IIED and NIED claims still could not proceed. Williams-Jefferies claims that she suffered acute emotional distress both as a result of (a) "the disparate treatment, the retaliation and wrongful termination" that she experienced—that is, the events that gave rise to her Title VII claims—and (b) the October 2007 incident with her supervisor, after which she felt "physically threatened." *See* Dkt. 1-1 at 13–14. To the extent that Williams-Jefferies's IIED and NIED claims are premised on the same allegations that give rise to her Title VII claims, however, those allegations (even taken as true) do not state claims for IIED and NIED. AARP's overall course of conduct, as Williams-Jefferies has described it, was not "so outrageous in character, [nor] so extreme in degree," to give rise to an IIED claim, *see Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628–29 (D.C. 1997), nor does it involve any allegation that Williams-Jefferies was in the "zone of physical danger," as she must have been in order to state an NIED claim, *see Hedgepeth v. Whitman Walker Clinic*,

22 A.3d 789, 796 (D.C. 2011).  By contrast, to the extent Williams-Jefferies's IIED and NIED claims are premised not on AARP's *overall* conduct, but on the specific incident she describes in October 2007—assuming, without deciding, that such an incident might be sufficient to state claims for IIED and NIED—that incident is not "intertwined with" Williams-Jefferies's Title VII claims in the way contemplated by *Saunders*.  See *Saunders*, 580 A.2d at 662 (describing cases in which "the nature of the action rested on the other torts and the emotional distress aspect of the claim was essentially an outgrowth of the other pleaded torts").

Accordingly, the Court agrees with AARP that Williams-Jefferies's IIED and NIED claims are untimely, and must be dismissed.

## CONCLUSION

For these reasons, the Court hereby **GRANTS** AARP's partial motion to dismiss, Dkt. 8. Count III of the complaint is hereby dismissed with prejudice.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  June 6, 2016